207 So.2d 45 (1968)
Robert J. GALASSO, Appellant,
v.
STATE of Florida, Appellee.
Joseph A. MANCUSI, Appellant,
v.
STATE of Florida, Appellee.
Nos. 940, 941.
District Court of Appeal of Florida. Fourth District.
February 5, 1968.
Rehearing Denied March 4, 1968.
*46 C. Wendell Harris, Vero Beach, for appellants.
Earl Faircloth, Atty. Gen., Tallahassee, and Fred T. Gallagher, Asst. Atty. Gen., Vero Beach, for appellee.
REED, Judge.
The defendants, Robert J. Galasso and Joseph A. Mancusi, appellants here, were charged with the unlawful possession and cultivation of a narcotic drug under Sections 398.03 and 398.04, F.S. 1965, F.S.A. They were tried jointly in the Circuit Court for Indian River County. The trial began on June 27, 1966. The jury returned separate verdicts of guilty as to each defendant on each count of the information, and the defendants were separately adjudged and sentenced by the trial court on the 21st day of July, 1966. Each defendant appealed from the pertinent judgment and the appeals have been consolidated.
During the course of the trial, a stipulation was made in open court by the assistant state's attorney that an objection by either of the defendants would be considered as having been made by both.
The defendants assert that the trial court erred in the admission of several items of evidence, but in view of our disposition of the case, only one will be discussed.
The record indicates that on May 24, 1966, Mr. James B. Powers, a narcotics inspector with the Florida State Board of Health, went to an apartment occupied by the defendants in the City of Vero Beach accompanied by a detective from the police department of the City of Vero Beach and Lem Brumley, Jr., an investigator from the Indian River County Sheriff's Department. Upon arrival at the apartment, the officers served on the defendants a warrant for their arrests and a search warrant pursuant to *47 which the officers searched the apartment. During the course of the search, one of the officers came across an envelope containing about four ounces of suspected marijuana and handed the envelope to Mr. Powers. Thereafter, Mr. Powers, the defendants, and the officers went out behind the apartment and examined a garden patch in which cannabis plants, commonly known as marijuana, were found growing.
After the close of the state's case in chief, the defendant Joseph Mancusi took the stand in his own behalf and testified that he thought the plants which he had protected and cultivated by watering were oregano, not marijuana. The defendant Galasso did not testify.
The state called Mr. Lem Brumley, Jr., as a rebuttal witness. By the following questions and answers, Mr. Brumley related what occurred in the defendants' apartment when the envelope containing the suspected marijuana was found and given to Mr. Powers:
"Q What, if anything, did the Defendant Mancusi say to you concerning this packet sitting on the dresser?
"* * *
"A Mr. Powers examined the packet there that had the marijuana in it and he turned around and he made a statement to the effect, he says `Look here, boys,' 
"[Objection by defendants.]
"BY THE COURT:
"Q Were the defendants there at the time?
"A Yes, sir.
"THE COURT: The objection is overruled.
"A He said, `Look here, boys, look what I found; whose is this?' And Galasso, they were both sitting on a bed there and Galasso said, `Some man. Don't say anything.' And that is all that was said." (Emphasis added.)
The defendants promptly moved to strike the answer given by Officer Brumley, and the motion was denied. In our opinion this testimony was inadmissible as to both defendants and should have been stricken.
The admissibility of the quoted testimony is controlled by the decision of the United States Supreme Court in the case of Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694. That decision establishes guidelines which must be followed by officers to protect an accused person in the exercise of his privilege against self-incrimination established by the Fifth Amendment to the Constitution of the United States while he is held in custody or otherwise deprived of his freedom of action in any significant way. As a corollary to its holding, the Court in Miranda v. State of Arizona ruled that it is impermissible to penalize an individual for exercising his right to remain silent when he is under police custodial interrogation. In footnote 37 of its opinion, the Court stated:
"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."
The purpose in the ruling in Miranda v. State of Arizona is to guarantee full effectuation of the privilege against self-incrimination, Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 882.
The state argues that the question put by Mr. Powers to the defendants, to-wit: "Look here, boys, look what I found; whose is this?", was not accusatory and, therefore, evidence of the question and the defendants' silence in response thereto is not prohibited by the Miranda decision. This is an unduly *48 restrictive interpretation and is one which in our opinion is inconsistent with the express language of the decision as well as its purpose. Any evidence to the effect that a defendant in custody remained silent is inadmissible where such evidence tends to penalize the defendant for having exercised his right to remain silent, whether such silence is in the face of a specific accusation or not. That was the effect of the testimony by Officer Brumley because the defendants' silence in the face of Mr. Powers' question relating to the marijuana found in the apartment at least implied an involvement in the illegal possession and cultivation of marijuana.
The ruling in the Miranda decision to the effect that it is impermissible to penalize an individual who while in police custody exercises his privilege against self-incrimination by remaining silent, prohibits the admission of testimony relating to the silence of a defendant during the investigatory stages of a criminal case, even though the defendant later chooses to take the stand at the trial and testify in his own behalf, cf. Jones v. State, Fla.App. 1967, 200 So.2d 574, 576. To permit the use of such testimony would penalize the defendant for having remained silent at the investigatory stage because evidence of such silence tends to derogate his testimony at trial and also implies guilt.[1]
The state argues that an instruction given by the trial court during the charge to the jury cured any error in the admission of the testimony. The charge, which was merely a general statement to the effect that an accused individual when apprehended has no duty to speak, neither specifically related to the objectionable testimony nor closely followed it in point of time. Under these circumstances, it is our view that the charge did not cure the prejudicial effect of the testimony, Wilson v. State, 1938, 134 Fla. 199, 183 So. 748.
The defendants also assert that the warrant issued for the search of their apartment was not based on an affidavit sufficient to show probable cause and, therefore, the evidence obtained by the search was inadmissible. We have examined the affidavit on which the warrant was issued and hold it sufficient to show probable cause.
The judgments and sentences appealed from are reversed and the cause remanded for a new trial.
WALDEN, C.J., and CROSS, J., concur.
NOTES
[1] We do not believe that our holding in this regard is inconsistent with the opinion of the Florida Supreme Court in State v. Hines, Fla. 1967, 195 So.2d 550. In that case, the court held that where a defendant voluntarily took the witness stand in his own behalf he could be cross-examined as to his failure to testify at a preliminary hearing and that such cross-examination was not prohibited by Section 918.09, F.S. 1965, F.S.A. That decision was made without reference to Miranda v. State of Arizona and properly so because the trial in the lower court preceded the effective date of the Miranda decision which is June 13, 1966. In Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 882, the court held that the Miranda decision does not apply retroactively, but applies only to cases commenced after the Miranda decision was issued.