FRANK A. SMITH, Associate Judge.
The defendant was tried upon an information and convicted upon a count charging him with unlawfully aiding and assisting in setting up, promoting and conducting a lottery for money, commonly known as Bolita and Bond. No request was made for argument and the case has been submitted for decision upon briefs filed herein.
As to point involved No. 1, which was based on No. 18 of amended assignment of errors and which challenged the ruling of the Court in declining to instruct the jury to disregard a statement by the witness Moye, a detective, that he went to defendant’s place of business “because of information that Bolita was being sold there.” Without deciding whether the request was seasonable when not made until his testimony was completed and he was dismissed from the stand, the Court is of the opinion that no harmful error was committed. Counsel in addressing the Court stated he would like for the jury to be instructed to disregard the testimony and expressed his opinion that the jury should be so instructed whereupon the Court replied “Well, it isn’t evidence of his guilt in this case”; however, he then proceeded to express his opinion that it was relevant. The further discussion between counsel and the Court recognized it as hearsay testimony, although such had not been assigned as a ground for the request. The presentation should be considered as a motion and apparently the trial judge treated it as such, but counsel -should have been more specific in his appeal than merely to say “because that’s not proper for their consideration.” The State contended it was admissible in rebuttal of his direct testimony, but even so that in no wise relieves its character as hearsay. By itself this ruling if erroneous is not so grievous as to require a reversal. See Mugge v. Jackson, 50 Fla. 235, 39 So. 157.
Point No. 2 complaining that defendant should not have been required to answer questions in regard to lottery activities more than two years prior to the offense for which he was being tried is without merit and must be overruled.
Point No. 3 complains of evidence given by the State’s witness, Alfonso, in regard to blackboards being used by Bolita operators and his stating that he had been so informed by self-confessed operators. After the witness had answered the question in the affirmative, counsel for defendant asked for a delay and stated his belief that the “question here is what this Defendant on this day was using it for”. He had not objected to the question, did not move to strike the answer or move that the Court give the jury any instruction in regard thereto. However, the Court did offer an explanation in regard to the evidence, closing the incident apparently to the satisfaction of defense counsel as he made no further complaint at the time.
Point No. 4 challenges the sufficiency of the evidence. A novel situation is revealed in this case, in that a blackboard bearing numbers written thereon in chalk and found in the possession of defendant is the paraphernalia, the physical evidence, relied upon by the State in proof of the charge that the defendant engaged *706 in unlawfully aiding and assisting in the setting, promoting and conducting of a lottery for money. Counsel for defendant states there is no reported case in this jurisdiction (Florida, we assume) involving the use of a blackboard as evidence of being involved in a lottery and the Court is certainly aware of none. The fact that no precedent is available, however, in no sense precludes the possibility that those who persist in the unlawful and profitable traffic may not vary their pattern of operation in such a manner in order to avoid detection and either escape prosecution or make it more difficult for the State to obtain evidence against them. It is generally known that in the past from time to time they have varied the method of their operation, although it remains basically the same. It matters not whether the record of a sale is made on small tickets in pads, paper in whatever form, a slate, shingle, plank, brick or blackboard.
The State offered testimony by a witness named Mike Alfonso who was qualified as an expert in the Bolita field. He was acquainted with it from his youth, and at the time of trial had been a member of the Tampa Police Department for nearly five years, and was a member of the Vice Squad. He had participated in a number of investigations of Bolita violations, had bought it and had talked with operators who were versed in the vice. The record shows clearly that he was competent to testify as to the identity of the blackboard with its figures written thereon in chalk. He clearly demonstrated his knowledge and fully showed that it was Bolita paraphernalia. The evidence was clear that the blackboard had been there previous to the date that the officers went to arrest him upon a warrant and that on a previous occasion he had hurriedly erased the figures and told the officers that they had not caught him and that he would continue as long as he lived but they would not catch him. The proof that he was engaged in the business is abundant.
Since the Court has found the evidence sufficient, it is unnecessary to consider the assignment of denial of motion for directed verdict, raised in Point 4a.
Point No. 5 questions the refusal of the Court “to allow the Defendant’s counsel to cross-examine State’s witness Ryals as to the ‘Bad Blood’ or bias between the witness and defendant.”
The witness Ryals had gone into defendant’s place of business on June 15th and had testified as to what occurred upon that occasion and nothing more, but upon cross-examination defense counsel elicited from him the fact of two visits two days prior thereto and sought to interrogate him about those visits to which the State objected upon .the ground that it was not in cross of the direct examination.
The jury was excused and counsel and the Court went over the situation, including a further cross-examination of the witness which revealed that when witness and Alfonso went to the place they found it closed, Alfonso talked to one Betancourt who was shown to be associated with defendant at his place of business, but Alfonso said nothing to defendant. The defendant came out of the building and as Ryals and Alfonso got back into their car and started to leave defendant shouted in Latin (Spanish to Alfonso) who told witness defendant was cussing him and Alfonso got back out of the car. At this stage counsel inquired of witness if Alfonso didn’t curse defendant that day while he was there, which witness denied. He said that Alfonso asked defendant to open the door and denies that Alfonso cursed defendant, but says that defendant cursed Alfonso that time — this time in English.
It seems from counsel’s argument on the objection (page 49) his purpose was “to show some motive on the part of the witness or hostility or bad blood towards the accused, on the part of the witness.” Also he stated he should be allowed to show that the warrant which was used in this case to gain admission to the premises *707 was a sham and merely a device used to make an arrest which they might not otherwise lawfully make. The Court announced the ruling that defendant could not show it in the way he was seeking to do it.
 Had the purpose been to show a previous altercation or difficulty between defendant and witness, defendant would have been entitled to inquire about it for the purpose of showing possible ill feeling on the part of witness, but no such purpose was shown nor was there any indication that such existed. No error in the ruling is made to appear.
Point No. 6 of .^appellant’s argument challenges the action of the trial court in allowing the State to cross-examine defendant with respect to previous arrests and physical altercations with policemen. Counsel argues that the interrogation constituted an attack upon defendant’s character and reputation, but even if such examination may be considered such an attack, the record does not show that objection was properly raised and from a careful study of the examination the Court does not find that it was so prejudicial as to constitute harmful error.
Finding no reversible error in the record, the judgment of the lower court is hereby affirmed.
KANNER, C. J., and ALLEN, J., concur.