LAWSON, J.
Steven Morris appeals from his convictions and sentences for driving under the influence of alcohol (“DUI”), within ten years after a prior DUI conviction in violation of section 316.193(2)(b)l., Florida Statutes (2006), and driving while license suspended or revoked (“DWLS”), in violation of section 322.34(2)(a), Florida Statutes (2006). On appeal Morris argues that the trial court erred by permitting the prosecutor to present arguments, over defense counsel’s objection, that improperly commented on his right to remain silent and improperly shifted the burden of proof to him. We agree and reverse.

Relevant Facts

In the early morning hours of March 8, 2007, Morris drove his Ford SUV off of a curved road in a residential neighborhood in Merritt Island, Florida, and into a palm tree in someone’s front yard. The noise alerted neighbors to the crash, many of whom came out to investigate. One of the neighbors also called law enforcement.
■ At trial, the State called two neighbors and three law enforcement witnesses. The lay witness in whose front yard Morris’ SUV rested did not testify that he smelled alcohol on Morris’ breath, and stated that he was not really paying attention to whether Morris was impaired. He did not notice Morris acting in a belligerent manner, or cussing at the law enforcement officers who arrived, but did see Morris lose his balance several times. The other lay witness was a nurse who lived nearby and examined Morris for potential head trauma when she arrived on the scene. She testified that Morris’ breath smelled of alcohol and that he spoke with a stumbling, slowed speech pattern that was “not normal.” However, this witness did not testify to other indications of impairment, and did not see Morris cussing at or acting belligerently toward the officers.
By contrast, the officers all testified that Morris’ was extremely combative and abusive, cussing and spitting at them; that his speech was “slurred;” that his eyes were blood-shot and glassy; and that he was stumbling and off-balance to the point that he could not stand. According to the officers’ testimony, Morris refused to perform any field sobriety exercises, refused to take an alcohol breath test, and informed *122 the officers of his refusal in no uncertain terms with his strong expletives, such as “f* * * you.”
Based upon these observations, one officer testified that it was his opinion that Morris was impaired. This was the officer who was tasked with conducting the DUI investigation and who made the decision to arrest Morris for DUI at the scene. The second officer testified only that Morris was “possibly under the influence,” and stated that he was not sure because they “didn’t do any testing” due to Morris’ refusal. The third officer was not asked to opine on the issue of Morris’ impairment.
During the defense’s closing, counsel argued that it was not illegal for a person to drive after consuming alcohol unless the person had consumed enough that he or she was actually impaired. He then argued that the State did not have any evidence to prove that Morris was impaired— no breath or blood tests, no field exercises — nothing to show impairment beyond a reasonable doubt.
In response, the State argued that there was obvious evidence of Morris’ impairment including slurred speech, bloodshot eyes, stumbling, and driving his car into a tree. The prosecutor ended his closing by arguing that an innocent man would not refuse to perform field sobriety exercises or a breath test. As part of this argument, the prosecutor also stated that an innocent man, if arrested would say, “I haven’t been drinking, why are you arresting me?” Then, the prosecutor added that an innocent person would also volunteer to take the tests to “prove” his or her innocence, stating,
“That [innocent] man is thinking, yes, get me to that, get me to that instrument, let me take that breath test, let me prove this officer wrong.”
The defense objected to these comments. At a bench conference that followed, the prosecutor claimed that he was simply presenting “a hypothetical.” The trial court overruled the objection and the prosecutor concluded his closing argument.

Applicable Law

The Fifth Amendment to the United States Constitution provides, in part, that no person “shall be ... compelled in any criminal case to be a witness against himself....” U.S. Const. Amend. 5. To give effect to this clause, it is well-settled that “courts must prohibit all evidence or argument that is fairly susceptible of being interpreted by the jury as a comment on the [defendant’s] right of silence.” Smith v. State, 681 So.2d 894, 895 (Fla. 4th DCA 1996) (citing State v. Smith, 573 So.2d 306, 317 (Fla.1990)).
However, the Fifth Amendment bar against compelled “communications” or “testimony” generally does not encompass a bar against “compulsion which makes a suspect or accused the source of ‘real or physical evidence^]’ ” Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Accordingly, “both federal and state courts have usually held that [the Fifth Amendment] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.” Id. Therefore, when a law enforcement officer has probable clause to believe that an accused has committed a DUI offense, the officer can lawfully compel the person to perform field sobriety exercises and a breath test. Id.; see also State v. Taylor, 648 So.2d 701 (Fla.1995) (holding that Taylor’s refusal was not elicited in violation of the Fifth Amendment privilege against self-incrimination and “that the refusal is probative of the issue of consciousness of guilt”); State v. Bus- *123 ciglio, 976 So.2d 15 (Fla. 2d DCA 2008) (holding that a refusal to submit to a breath test is not compelled testimony protected by the Fifth Amendment). If the accused refuses, the State at trial can elicit testimony regarding that refusal as evidence of the person’s consciousness of his or her guilt. Id.
In doing so, however, “the state cannot comment on a defendant’s failure to [voluntarily] produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant had the burden of introducing evidence.” Jackson v. State, 575 So.2d 181, 188 (Fla.1991); see also, Concha v. State, 972 So.2d 996 (Fla. 4th DCA 2008).

Analysis

It should be clear from our summary of the law that no Fifth Amendment protection barred the prosecutor in this case from arguing to the jury that Morris’ refusal to perform the field sobriety exercises and submit a breath sample evidenced consciousness of guilt. It should be just as clear that the prosecutor (1) violated Morris’ Fifth Amendment rights when he argued that an innocent person would speak up and protest his innocence and (2) improperly shifted the burden of proof by arguing that an innocent person would volunteer to take a breath test to prove his or her innocence. Irrespective of whether the prosecutor was discussing a “hypothetical innocent person,” he was telling the jury that they should infer Morris’ guilt from the fact that he did not speak up and did not take other affirma-five steps to prove his innocence. Clearly, the objection to these patently impermissible comments should have been sustained. Because the State has failed to prove beyond a reasonable doubt that these errors did not contribute to the verdict,[1] we reverse and remand for a new trial.
REVERSED and REMANDED.
PLEUS and COHEN, JJ., concur.

. "The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." See State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986) (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).